Berwind White Coal Min. Co. v. Borinquen Sugar Co.

# BERWIND WHITE COAL MINING COMPANY
*v.*
# BORINQUEN SUGAR COMPANY.

San Juan, Equity, No. 897.

RE ORGANIZATION OF DEFENDANT COMPANY.

Reorganization—Prior Bonds.

1. Where the reorganization of a corporation is at the instance of second mortgage bondholders and later security holders, this does not affect the first mortgage, and is in subordination to the holders of the first mortgage bonds.

Operating Expenses.

2. Claimants for operating expenses which are superior to the mortgages, unless they assent to reorganization, must be provided for in cash.

Reorganization.

3. A plan of reorganization is effective only against the parties who join in it, but where it is proposed by a majority of each class the court will carry it out by decree as far as possible.

Reorganization—Dissension.

4. The court has no power to compel dissenters to assent. It can only regulate a sale, which must be open to all bidders. Reorganization is a voluntary arrangement effected by bidders outside of court.

Mortgage Sale—Discretion of Court.

5. The court on a previous occasion refused to permit a sale under second mortgage when it would result in a sacrifice of the property and unsecured creditors. It may be granted at a later time, however, when these results will not follow, and a reorganization can be effected fair to all.

Reorganization—Receiver's Certificate.

6. Reorganization must be subordinate to receiver's certificate issued for obligations authorized by the court. Such certificates must

NOTE.—The cases discussing priority of receiver's certificates of indebtedness are set forth in notes in 9 L.R.A. 143, and 2 L.R.A. (N.S.) 1052, 1063.

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

be retired or otherwise provided for before reorganization will be approved.

Reorganization—Bonds.

7. It is usual to provide that the bonds of a company foreclosed may be used as cash at a foreclosure sale, and that sufficient money must be provided in addition to pay in full or *pro rata* expenses, preferred claims, and interests not entering into the plan.

Opinion filed April 20, 1914.

————

*Mr. Francis E. Neagle* for West India Oil Company.

*Mr. J. R. F. Savage* for Mr. Marr.

*Mr. Frank Antonsanto* for Bertran Hermanos & Company and Ramon Perez.

*Mr. Guzman Benitez* for Banco Territorial y Agricola.

*Mr. Cabezudo,* as trustee of the bondholders.

*Mr. Martin Travieso, Jr.,* for Fritze, Lundt, & Company, Succrs., John H. Murphy Iron Works, and Mr. Waldemar, Hepp, who is a bondholder, G. Muñoz, second mortgagee.

*F. H. Dexter* for Sucesores of José María Oritz.

*Mr. Herminio Diaz* for Korber & Company.

*Mr. Luis Llabres* for himself as a stockholder.

HAMILTON, Judge, delivered the following opinion:

The Borinquen Sugar Company was incorporated under the laws of Porto Rico in the year —— as the Porto Rico Sugar Company, and under one or the other name for a long time did very successful business. On July 24, 1907, the Porto Rico Sugar Company issued a series of mortgage bonds in the sum of $135,000, payable in ten years at 9 per cent. The trustee of this mortgage is the Banco Commercial de Puerto Rico. On March 18, 1910, the company under the new name of the Borinquen Sugar Company issued a second mortgage to the amount of $365,000, payable in thirteen years with interest at 7 per cent. The trustee of the second mortgage is the Banco Territorial y Agricola de Puerto Rico. Both mortgages were duly recorded. The company after awhile fell into financial difficulties, and on June 29, 1912, it was found necessary for a receivership to be instituted, Hernand Behn being made receiver by this court, and administering the property since that time. In order to carry on the business of the company, he, by direction of the court, borrowed money from the Royal Bank of Canada to the amount of $162,500, and on July 1, 1913, a second contract of the same kind was authorized by this court for the ensuing year. Crops have been made and money disbursed as shown by reports of the receiver made from time to time. Meanwhile different claims have been presented, and on June 17, 1913, an order was entered for the filing and proof of

Berwind White Coal Min. Co. v. Borinquen Sugar Co.

all claims before the clerk of this court, to be referred to Master John M. Dabney. This reference has been had, report made on October 14, 1913, and confirmed except where excepted to. Attempts at reorganization have been made, but unsuccessfully, and on January 6, 1914, the court authorized the receiver to lease the property to certain creditors, and this lease contract had been executed and is on file. This has subsequently been modified by admitting as joint lessees representatives of the second mortgage bondholders.

On March 27, 1914, a petition was filed looking to a reorganization of the defendant company on terms set out therein, and a hearing of all parties in interest was had on April 13, 1914. The court has carefully considered the application, and its opinion thereon is as follows:

1. The scheme as proposed leaves the first mortgage intact, the theory being that those bondholders are fully protected by their security and there is no ground upon which they could be asked to sacrifice their priority. Whatever is done, therefore, must be in subordination to the rights of the holders of the first mortgage bonds.

2. There have been claims filed, and some of them approved, claiming a priority for operating expenses over the first mortgage. So far as these creditors do not voluntarily take part in the reorganization, they must be provided for in some way satisfactory to themselves. Such claims when approved are paramount even to the first mortgage. This can be effected only by their written assent to some plan, by purchase of their claims by the petitioners, or by a provision in the decree that they shall be paid in cash out of the proceeds of sale.

VII. Porto Rico—3.

A number of these claims are still under consideration by a special master. It is necessary that their amount and relative priorities be ascertained before a permanent reorganization can be effected. To that end, therefore, the master will be directed to speed the cause and hear, determine, and report on these claims at the earliest possible date.

3. The plan of reorganization presupposes the foregoing limitations. It necessarily can be made effective only against the parties who join in it. These parties constituting a majority of each class are entitled to have any proposition by them carefully considered, and the court will be inclined to carry it out if possible. There is no reason why the parties should not contract between themselves as they see proper, and leave it carried out by decree, provided other interests are not disturbed.

4. There are, however, a number of dissentient claims in each class. The court has no power to compel them to assent to anything. It has only the power to permit and regulate a sale at the request of the second mortgage bondholders, and that sale must be open to all bidders. If any creditor, or anyone else, or a combination of bidders, shall offer the highest sum, the property shall be awarded to him or them as the successful bidder. The sale and the reorganization are two different processes. The sale must be conducted in the usual form of chancery sales. The reorganization is a voluntary arrangement carried out by the bidders or parties expecting to be bidders, outside of the court.

5. The court exercised the power to refuse a sale under the second mortgage, although asked for by the bondholders of this mortgage, because it seemed then, in July, 1913, that this

would result in a sacrifice of the property and of all unsecured creditors. The court has an equal right to permit the sale at this time if satisfied that circumstances have changed, or that upon a sale a proper reorganization can be effected fair to all. The machinery so far as the court is concerned is simply ordering a sale, and not confirming it until such a reorganization is effected as is satisfactory to the court. The most the court can do at the present time is to indicate approval of a plan of reorganization, and later see that it has been made effective as above.

The defects alleged in opposition to the proposed reorganization do not seem to the court to be well taken. The minority holders of claims have a perfect right to make any opposition they see proper, and the court has no wish to control this. It can only say that it seems to the court that the plan proposed is fair, and that it should be and now is approved by the court. The minority holders of claims are not affected in the slightest. They are free to bid for the property, and if they do not they must receive their proportionate share, whatever it may be, of the proceeds of the public sale. Whether this will be 100 per cent or 5 per cent, the court has no way of knowing, and no way of controlling. The parties are perfectly free to come into this plan on the basis proposed, or to stay out to take the chances of the sale.

6. The receiver has by previous orders of this court entered into a refaccion or similar contract with the Royal Bank of Canada, whereby certain sums are advanced for the making of the crop, evidenced by one or more receiver's certificates, and to be repaid at certain times and by certain methods prescribed in said contract. Any reorganization will be subordinate to

this contract. The receiver's certificate or certificates must be retired or otherwise provided for to the satisfaction of the said Royal Bank of Canada before any reorganization can be effected.

7. It is usual, and will be provided in the decree in this case, that the bonds of the company may be used as cash at the foreclosure sale when had, but that sufficient money must be provided in addition thereto to pay in full or *pro rata,* as the case may be, expenses, preferred claims, and all interests that do not agree to and do not enter into the proposed reorganization.

An order will therefore be entered approving the plan of reorganization, subject to the views expressed in the foregoing opinion, and the attorneys for the parties submitting the plan are directed to prepare and submit to the court for further consideration a decree which shall provide for foreclosure sale and the reorganization contemplated. This decree when submitted will be considered by the court or referred to a master, and, if found suitable, will be adopted or modified as may seem best. Further orders are reserved until such decree is submitted. An order approving the plan of reorganization in principle, and directing the submission of a provisional decree, will be entered.